UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

CINDY DESIR, on behalf of herself, FLSA Collective Plaintiffs and the Class,

Plaintiff,

-against-

NYU LANGONE HEALTH SYSTEM, and NICOLE REISS,

Defendants.

------------------------------------------------------- X

1:19-cv-08144(AT)(SC)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

*Of Counsel and On the Brief:*

Robert S. Whitman
Lisa L. Savadjian

SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT....1

II. STATEMENT OF FACTS....2

A. Plaintiff's Unrelated Employment with NYU Langone....2

B. The Pharmacy Technician Training Program....3

C. Plaintiff's Enrollment in the PTTP....4

III. ARGUMENT....5

A. This Court Should Deny Plaintiff's Motion for Conditional FLSA Certification....5

B. Plaintiff's Proposed Notice is Unacceptable....12

C. There are No Grounds for Applying Equitable Tolling....15

IV. CONCLUSION....17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto v. Rico Pollo #2 Rest. Corp.*,
No. 18-CV-4762 (BMC), 2018 WL 6813057 (E.D.N.Y. 2018) ........ 16

*Benavides v. Serenity Spa NY Inc.*,
166 F. Supp. 3d 474 (S.D.N.Y. 2016) ........ 14

*Brown v. Barnes & Noble, Inc.*,
252 F. Supp. 3d 255 (S.D.N.Y. 2017) ........ 6

*Colon v. Major Perry Street Corp.*,
No. 12 Civ. 3788, 2013 WL 3328223 (S.D.N.Y. Jul. 2, 2013) ........ 15

*Flood v. Carlson Restaurants Inc.*,
No. 14 Civ. 2740 AT, 2015 WL 260436 (S.D.N.Y. Jan. 20, 2015) ........ 11

*Foster v. Food Emporium*,
No. 99 Civ. 3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) ........ 15

*Fu v. Mee May Corp.*,
No. 15 Civ. 4549 (KPF), 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016) ........ 12

*Garcia v. Spectrum of Creations Inc.*,
102 F.Supp.3d 541 (S.D.N.Y. 2015) ........ 14

*Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*,
No. 17 Civ. 7066 (DF), 2019 WL 699179 (S.D.N.Y. Feb. 5, 2019) ........ 16

*Glatt v. Fox Searchlight Pictures, Inc.*,
811 F.3d 528 (2d Cir. 2016) ........ *passim*

*Gomez v. Kitchenette 123 Inc.*,
No. 16 Civ. 3302 (AJN), 2017 WL 4326071 (S.D.N.Y. Sept. 5, 2017) ........ 11

*Gordon v. Kaleida Health*,
No. 08–CV–378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ........ 14

*Guo v. Tommy's Sushi Inc.*,
No. 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2015) ........ 11

*Guzman v. VLM, Inc.*,
No. 07-CV-1126, 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ........ 13

*Harhash v. Infinity West Shoes, Inc.*,
No. 10 Civ. 8285, 2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ........................................13

*Hernandez v. Merrill Lynch & Co.*,
No. 11 Civ. 8472 (KBF), 2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012)................................13

*Hilaire v. Underwest Westside Operating Corp.*,
No. 19 Civ. 3169(PAE)(RWL), 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020) .........................5

*Hoffmann v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997)...........................................................................................5

*Ikikhueme v. CulinArt, Inc.*,
No. 13 Civ. 293 (JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013) ..................................11

*Ji Li v. Ichiro Rest. Inc.*,
No. 14 Civ. 10242, 2015 WL 6828056 (S.D.N.Y. Nov. 5, 2015) ........................................14

*Jian Wu v. Sushi Nomado of Manhattan, Inc.*,
No. 17 Civ. 04661 (PGG) (DF), 2019 WL 3759126 (S.D.N.Y. July 25, 2019).....................17

*Klein v. Octagon, Inc.*,
No. 14. Civ. 6770(AT), 2015 WL 5821629 (S.D.N.Y. Sept. 30, 2015) (Torres, J.).................8

*Lawrence v. Florida*,
549 U.S. 327 (2007) ...............................................................................................................16

*Mark v. Gawker Media LLC*,
No. 13 Civ. 4347(AJN), 2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016).................................9

*Mata v. Foodbridge LLC*,
No. 14 Civ. 8754 (ER), 2015 WL 3457293 (E.D.N.Y. June 1, 2015) ............................ 11, 12

*Mazur v. Olek Lejbzon & Co.*,
No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ........................................13

*McBeth v. Gabrielli Truck Sales, Ltd.*,
768 F. Supp. 2d 396 (E.D.N.Y. 2011)....................................................................................13

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ......................................................................... 2, 5, 8, 10

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005) ...............................................................................................................16

*Parada v. Banco Industrial De Venezuela, C.A.*,
753 F.3d 62 (2d Cir. 2014) .....................................................................................................16

*Phillips v. Generations Family Health Ctr.*,
723 F.3d 144 (2d Cir. 2013) ....................16

*Reyes Cruz v. 70-30 Austin St. Bakery Inc.*,
No. 18 Civ. 7408(PAE)(HBP), 2019 WL 1929910 (S.D.N.Y. May 1, 2019)....................11

*Romero v. ABCZ Corp.*,
No. 14 Civ. 3653, 2015 WL 2069870 (S.D.N.Y. Apr. 28, 2015)....................13

*Romero v. H.B. Auto. Group, Inc.*,
No. 11 Civ. 386, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ....................5

*Romero v. La Revise Assocs., L.L.C.*,
968 F. Supp. 2d 639 (S.D.N.Y. 2013)....................15

*Rudd v. T.L. Cannon Corp.*,
No. 10-0591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ....................6

*Sandler v. Benden*,
715 F. App'x 40 (2d Cir. 2017) ....................9

*Scott v. Chipotle Mexican Grill, Inc.*,
No. 17-2208-CV, 2020 WL 1541069 (2d Cir. Apr. 1, 2020)....................10

*Shiqiang Gao v. A Canaan Sushi Inc.*,
No. 18 Civ. 6442 (GBD), 2019 WL 6724359 (S.D.N.Y. Dec. 10, 2019)....................16

*Trinidad v. Pret A Manger (USA) Ltd.*,
962 F.Supp.2d 545 (S.D.N.Y. July 11, 2013)....................15

*Vaughn v. Phoenix House New York Inc.*,
No. 19-CV-517, 2020 WL 1964129 (2d Cir. Apr. 22, 2020)....................7

*Vlad-Berindan v. N.Y.C. Metro. Transp. Auth.*,
No. 14 Civ. 10304 (VEC)(FM), 2016 WL 1317700 (S.D.N.Y. Apr. 1, 2016)....................10

*Wang v. Hearst Corp.*,
877 F.3d 69 (2d Cir. 2017) ....................9

**Statutes**

DOL Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act....................6, 7

Fair Labor Standards Act ....................*passim*

New York Labor Law ....................1, 13, 15

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................15

Defendants NYU Langone Hospitals (incorrectly named as "NYU Langone Health System" in the Complaint) ("NYU Langone") and Nicole Reiss (collectively "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Cindy Desir's ("Plaintiff") motion for conditional collective certification ("Motion").

## I. PRELIMINARY STATEMENT

Plaintiff filed this lawsuit on September 3, 2019 as a putative collective action under the Fair Labor Standards Act ("FLSA") and putative class action under the New York Labor Law ("NYLL"). In the Motion, Plaintiff seeks Court authorization to send notice to a collective of individuals who allegedly served as unpaid interns while enrolled in NYU Langone's Pharmacy Technician Training Program (the "PTTP" or the "Program").

The PTTP is a four-month educational program in which enrolled students train to become Pharmacy Technicians. As a student in the PTTP, Plaintiff received comprehensive training, including classroom instruction, exams, hands-on experiential learning, and opportunities to observe working Pharmacy Technicians. Plaintiff also took and passed the professional certification test for Pharmacy Technicians.

During her enrollment in the PTTP, Plaintiff was at all times a student, not an "intern" and not by any stretch an "employee" entitled to wage payments under the FLSA. But assuming *arguendo* that Plaintiff was an "intern," her Motion does not make even a minimal showing that she should have been treated as an employee and that her unpaid status, and that of other students in the PTTP, was a common violation of the FLSA. Regardless, because NYU Langone is a not-for-profit organization, an unpaid internship is permissible under the FLSA.

Moreover, even if it were appropriate here to apply the test used to analyze for-profit internships, the question of whether PTTP students were "employees" under the FLSA cannot be answered in a collective action. The leading case on that subject, *Glatt v. Fox Searchlight Pictures,*

*Inc.*, 811 F.3d 528 (2d Cir. 2016), sets forth a multi-factor inquiry for evaluating whether the intern or the alleged "employer" was the "primary beneficiary" of the relationship. Most significantly for purposes of the Motion, the Second Circuit in *Glatt* emphasized the highly individualized nature of this inquiry and its resulting unsuitability for resolution on a collective or class basis. *See id.* at 539.

Plaintiff ignores this aspect of *Glatt*, citing the case only once to support a claim for equitable tolling. This omission speaks volumes. Under *Glatt* and its progeny, Plaintiff cannot come close to establishing that she and similarly situated others were together victims of a common scheme to violate the FLSA. Instead, as those cases make clear, the only way to assess whether a particular PTTP student was or was not the "primary beneficiary" of their relationship with NYU Langone is to examine that student's individual circumstances and experiences – an exercise that cannot be conducted based on collective proof.[1]

Accordingly, conditional collective action certification is not the proper vehicle to resolve Plaintiff's claims in this case. Her Motion should be denied.

## II. STATEMENT OF FACTS

### A. Plaintiff's Unrelated Employment with NYU Langone

On July 11, 2016, Plaintiff began working for NYU as a part-time Admitting Representative in the Patient Access Department. She remained an employee in this capacity until June 24, 2018. In this lawsuit, Plaintiff is seeking compensation only in connection with her participation in the Program and has not asserted any claims arising from her periods of employee service outside of the Program.

[1] Plaintiff's Motion fails to cite another leading Second Circuit decision on collective certification as well, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). To the extent that Plaintiff uses her Reply to discuss either case in substance, this Court should not consider her arguments, as Plaintiff should have addressed the controlling legal precedents in her opening brief and not "save" those arguments for reply.

**B. The Pharmacy Technician Training Program**

The Program is a course of instructional and experiential study designed to prepare qualified individuals to become certified as Pharmacy Technicians. It is accredited by both the American Society of Health System Pharmacists ("ASHP") and the Accreditation Counsel for Pharmacy Education ("ACPE"), two independent national certification organizations. The PTTP is also recognized by the Pharmacy Technician Certification Board ("PTCB"). (Declaration of Nicole Reiss ("Reiss Decl.") ¶ 3).

Upon successful completion of the Program, a student is prepared to take the Pharmacy Technician Certification Exam ("PTCE"), administered by the PTCB in contemplation of employment as a Certified Pharmacy Technician ("CPhT"). To be eligible to earn the CPhT Certification in New York State, students must first pass the PTCE. (*Id.*)

At the time Plaintiff was enrolled in the Program, it consisted of 600 hours of instruction over 16 weeks, with sessions starting in September, January, and May of each year. Those 600 hours comprised roughly one-third classroom instruction and examinations; one-third simulation training in a controlled "lab" setting, using candy and other placebos to learn bottling and compounding skills and techniques; and one-third personal observation of working Pharmacy Technicians to gain an understanding of the role. (*Id.* ¶ 4). The version of the website for the Program, as it existed during Plaintiff's participation, confirmed that "all student activities associated with the curriculum will be educational in nature" and that "students will not be receiving any monetary remuneration during this educational experience, nor will he or she be substituted for hired staff personnel within the clinical institution, in the capacity of a Pharmacy Technician." (*See id.* Ex. A).

In order to obtain a certificate of completion, students must achieve a passing grade of a 70 in each module of the Program based on graded coursework, written exams, and observations. (*Id.* ¶ 4).

### C. Plaintiff's Enrollment in the PTTP

On November 6, 2017, while working as a part-time Admitting Representative at NYU Langone, Plaintiff applied for admission to the Program. (Reiss Decl. ¶ 6). The application required her to submit a resume, an essay discussing why she wanted to pursue a career as a Pharmacy Technician, two reference letters, and her official high school transcript. (*Id.* Ex. B).

In the cover letter accompanying her application, Plaintiff confirmed her understanding of the educational nature of the Program:

> The appeal of the NYU Pharmacy Technician program is that the *education* is provided by NYULMC to current employee [*sic*]. It really resonated with me that NYULMC has that much faith in their teaching/training ability that they promote from within their own training facility. I appreciate that NYULMC provides their employees with an opportunity to expand their *education*. It shows that NYULMC encourages a lasting relationship with their employees. I also can't begin to express how much of a burden is lilted, when the concern of finance is removed when pursuing *higher education.*

(*Id.* Ex. C) (emphasis added).

On December 21, 2017, Plaintiff signed an Enrollment Agreement, which confirmed again that "[s]tudents will not be receiving any monetary remuneration during this educational experience." (*Id.* Ex. D).

Plaintiff successfully completed the Program's curriculum and took and passed the PTCE exam. (Reiss Decl., ¶ 9). She then applied for employment with NYU Langone as a full-time Pharmacy Technician II and was hired into that position effective June 24, 2018, subject to a 90-day probationary period concluding with a performance review by her manager. (*Id.* ¶ 11). On

September 20 and 21, 2018, Plaintiff failed to report to work without advising her manager. (*Id.* ¶ 12). After several attempts to reach her went ignored, NYU Langone sent Plaintiff a termination letter on September 21, 2018, informing her that her probationary employment was terminated effective that day due to job abandonment. (*Id.* Ex. E).[2]

## III. ARGUMENT

### A. This Court Should Deny Plaintiff's Motion for Conditional FLSA Certification

#### 1. Legal Standard

Courts in the Second Circuit apply a two-step method in determining whether to exercise their discretion to certify a collective action under FLSA Section 216(b) and to permit notice to be sent to potential opt-in plaintiffs. *See Myers v. Hertz Corp*., 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, known as the "notice stage," a district court may "mak[e] an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555.

While a plaintiff's burden at the notice stage has been described as "lenient," it "is not non-existent – certification is not automatic." *Romero v. H.B. Auto. Group, Inc.*, No. 11 Civ. 386, 2012 U.S. Dist. LEXIS 61151, at *27 (S.D.N.Y. May 1, 2012). Conditional certification is warranted only where the plaintiff meets her burden to prove, with facts and not unsupported assertions, that she and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F. 3d at 555 (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Hilaire v. Underwest Westside Operating Corp.*, No. 19 Civ. 3169(PAE)(RWL), 2020 WL 774133, at *3 (S.D.N.Y. Feb. 17, 2020) ("threshold issue in deciding whether to

[2] In this action, Plaintiff does not challenge her termination or assert any claims arising out of her employment with NYU Langone, as either a Pharmacy Technician or Admitting Representative.

authorize class notice in an FLSA action is whether plaintiff has demonstrated that potential class members are 'similarly situated").

Indeed, the purpose of conditional certification is to determine whether there is "an identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 266 (S.D.N.Y. 2017); *see also Rudd v. T.L. Cannon Corp.*, No. 10-0591, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011) (courts must be "mindful of the potential burdens associated with defending against a FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching [which] would result in loss of the efficiencies").

**2. An "Unpaid Internship" with a Non-Profit Organization is Permissible Under the FLSA**

In her Complaint, Plaintiff pleads that "at all relevant times herein, NYU Langone was and still is a not-for-profit corporation duly organized under and existing by virtue of the laws of the State of New York," engaged in running "not-for-profit hospitals in the greater metropolitan New York City area." (Complaint ¶¶ 1, 11 (ECF 1)). In light of NYU Langone's not-for-profit status, Plaintiff cannot establish that its failure to compensate her and other students during their alleged "internships" was a violation of the FLSA, since the statute permits unpaid internships at non-profit organizations. *See* DOL Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act ("unpaid internships for public sector and non-profit charitable organizations, where the intern volunteers without expectation of compensation, are generally permissible," even if the employer is the primary beneficiary in the relationship).[3]

[3] U.S. Department of Labor Fact Sheet #71 (January 2018), https://www.dol.gov/agencies/whd/fact-sheets/71-flsa-internships, (last accessed April 30, 2020).

### 3. The *Glatt* "Primary Beneficiary" Standard Requires Individualized Inquiries in Intern Cases

In the alternative, even under the analysis used in evaluating internships in for-profit businesses, Plaintiff still cannot establish that her claims are suitable for collective proof.

In *Glatt*, the Second Circuit held, in the context of internships and similar forms of "on the job training," that the "proper question is whether the intern or the employer is the primary beneficiary of the relationship." 811 F.3d at 538. The test considers the following seven factors:

- (1) "the extent to which the intern and the employer clearly understand that there is no expectation of compensation; [a]ny promise of compensation, express or implied, suggests that the intern is an employee—and vice versa,"
- (2) "the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions,"
- (3) "the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit,"
- (4) "the internship accommodates the intern's academic commitments by corresponding to the academic calendar,"
- (5) "the internship's duration is limited to the period in which the internship provides the intern with beneficial learning,"
- (6) "the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern," and
- (7) "the internship is conducted without entitlement to a paid job at the conclusion of the internship."

*Id.* at 536-37; *see also Vaughn v. Phoenix House New York Inc.*, No. 19-CV-517, 2020 WL 1964129, at *2 (2d Cir. Apr. 22, 2020) (reaffirming application of *Glatt* "primary beneficiary" analysis to question of whether unpaid intern qualifies as "employee" under FLSA).[4]

[4] The DOL has adopted the seven-factor *Glatt* test as the proper inquiry to determine whether an "intern" at a for-profit company is an "employee" entitled to payment under the FLSA. *See* DOL Fact Sheet #71, *supra*.

The Second Circuit described this analysis as "a highly context-specific inquiry," requiring evidence that is individualized to each intern. *See Glatt*, 811 F.3d at 539 ("assuming some questions may be answered with generalized proof, they are not more substantial than the questions requiring individualized proof"). Of particular relevance here, the court held that the "generalized proof" offered by the named plaintiff that the "interns were victims of a common policy to replace paid workers with unpaid interns" was insufficient to show that members of the proposed collective were "similarly situated even under the minimal pre-discovery standard" required for FLSA conditional certification. *Id.* (emphasis added). *See also Klein v. Octagon, Inc.*, No. 14. Civ. 6770(AT), 2015 WL 5821629, at *3 (S.D.N.Y. Sept. 30, 2015) (Torres, J.) (denying conditional certification where intern did not present sufficient evidence to meet "generalized proof" standard in *Glatt*).[5]

As in *Glatt*, the impediments to using common proof to demonstrate that all Program students "together were victims of a common policy or plan that violated the law," *Myers*, 624 F.3d at 555, are self-evident here: the very nature of the inquiry into employee status requires an individualized examination of *each student's* circumstances to understand whether the student's activities were primarily for her own personal education and professional development as a PTTP student or for the benefit of the Pharmacy Department. To determine whether NYU Langone is liable to any individual student, this Court will have to determine the amount of training the particular student received; whether she displaced regular Pharmacy Technicians; whether the Pharmacy Department received any immediate benefit from her alleged "work" or whether, on occasion, its operations were actually impeded due to the teaching of the students; whether each

[5] This Court's decision in *Klein* relied on the initial *Glatt* decision issued on July 2, 2015. *See* 2015 WL 5821629, at *2-3 (citing 791 F.3d 376 (2d Cir. 2015)). However, the Second Circuit later amended its opinion on January 25, 2016. *See* 811 F.3d at 531.

individual student was encouraged to apply for a job with NYU Langone at the conclusion of the PTTP; and whether each individual student understood that he or she was not entitled to compensation during the educational program. This individualized inquiry is simply not amenable to proof on an aggregate or representative basis. *See Glatt*, 811 F.3d at 539 ("the most important question in this litigation cannot be answered with generalized proof").

#### 4. Plaintiff Has Not Made a Factual Showing of a Common Unlawful Policy of Violation of the FLSA

Plaintiff's Motion advances a single theory in support of conditional certification: that the PTTP students "were subject to the same scheme to have interns perform unsupervised work duties without compensation." (Motion at 9). To support this broad proposition, she relies exclusively on her allegation that she performed hands-on work in the Pharmacy without being shadowed by a licensed Pharmacy Technician. (*See* Pl. Decl. ¶ 6.)

That fact, even assumed to be true, by itself is not indicative of whether Plaintiff was an "employee," and therefore cannot support a finding, even at conditional certification, that she and similarly situated others were together the victim of the same violation of the FLSA by virtue of not being paid for that time worked. As the Second Circuit has held, "*Glatt* specifically acknowledges that employers could receive an immediate advantage from unpaid interns" without the interns becoming employees under the FLSA. *Sandler v. Benden*, 715 F. App'x 40, 44 (2d Cir. 2017) (citing *Glatt*, 811 F.3d at 535-36); *see also Wang v. Hearst Corp*., 877 F.3d 69, 74 (2d Cir. 2017) ("*Glatt* clearly contemplates that training opportunities offered to the intern include 'product[s] of experiences on the job' and that "practical skill may entail practice, and an intern gains familiarity with an industry by day to day professional experience") (citing *Glatt*, 811 F.3d at 536); *Mark v. Gawker Media LLC,* No. 13 Civ. 4347(AJN), 2016 WL 1271064, at *9 (S.D.N.Y. Mar. 29, 2016) ("Plaintiffs take too narrow a view of [factor two], which includes the equivalent

of 'clinical and other hands-on training'"); *Vlad-Berindan v. N.Y.C. Metro. Transp. Auth.*, No. 14 Civ. 10304 (VEC)(FM), 2016 WL 1317700, at *7 (S.D.N.Y. Apr. 1, 2016) (applying *Glatt* test to public sector intern who did not fall within FLSA's Volunteer Exemption and finding that plaintiff was an intern "even though some of the *Glatt* factors point[ed] towards [p]laintiff being an employee").

**5. Plaintiff Is Not Similarly Situated to the Proposed Collective**

Even if Plaintiff can meet her burden to show a common NYU policy that allegedly violated the law, she still must demonstrate that she and the other potential opt-ins are similarly situated with respect to facts that matter for determining liability under the FLSA. *See Myers*, 624 F.3d at 555 ("[T]he purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist."); *Scott v. Chipotle Mexican Grill, Inc.*, No. 17-2208-CV, 2020 WL 1541069, at *9 (2d Cir. Apr. 1, 2020) ("The efficient resolution in one proceeding of common issues of law and fact arising from the same alleged FLSA violation . . . can only be achieved to the extent that named plaintiffs and opt-in plaintiffs share one or more issues of law or fact *that are material to the disposition of their FLSA claims*.") (emphasis added).

Here, Plaintiff has done no such thing. Her Declaration purports to recite the substance of conversations with other alleged Program students in an effort to show that those other individuals also performed actual work without pay for portions of the 600 Program hours. (Pl. Decl. ¶ 13). Specifically, Plaintiff declares that she and one other student complained that they were "given a great deal of responsibility even though [they] were only supposed to be shadowing the paid pharmacy techs." (*Id.* ¶ 10).

This is not enough, even at the conditional certification stage, to demonstrate that others were similarly situated. While some courts have granted conditional certification based solely on the plaintiff's personal observations, the plaintiff still must provide sufficient detail to enable this

Court to evaluate whether others had the same experience. For example, in *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18 Civ. 7408(PAE)(HBP), 2019 WL 1929910, at *5 (S.D.N.Y. May 1, 2019), the court denied conditional certification where the plaintiff's affidavit said nothing about the hours or wages of other individuals other than a vague assertion that they regularly worked in excess of 40 hours without overtime, which the court held was insufficient to "demonstrate a 'factual nexus' between named plaintiff and the potential opt-in plaintiffs."

Similarly, in *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2-3 (S.D.N.Y. June 3, 2013), the court denied a conditional certification motion that was premised only on the plaintiff's personal declaration containing "unsupported assertions" regarding other employees. Specifically, the plaintiff stated that it was his "understanding that the other Sous Chef employees of Defendants had similar duties and responsibilities and also were not managers," but the court held this was insufficient because he "made no allegations regarding the responsibilities or pay practices of the Sous Chefs who preceded him or succeeded him at Teachers College." *Id.* at *2; *see also Gomez v. Kitchenette 123 Inc.*, No. 16 Civ. 3302 (AJN), 2017 WL 4326071, at *4 (S.D.N.Y. Sept. 5, 2017) ("[W]hen a plaintiff submits only one affidavit, without corroboration, the level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing."); *Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2015) (denying motion for conditional certification based on "unsupported assertions" regarding discussions and comparisons among coworkers); *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293 at *5 (E.D.N.Y. June 1, 2015) ("details are particularly important where a conditional certification motion is based on the lone affidavit of a single employee").[6]

---

[6] Plaintiff cites this Court's decision in *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015) (Torres, J), for the proposition that her own pleading and Declaration are sufficient

Further, while Plaintiff purports to recite the substance of conversations with her classmates regarding the rigors of the Program, opining that they too worked under the "same intense pressure" (Pl. Decl. ¶ 13), "a plaintiff cannot simply state h[er] belief that others are similarly situated based on conversations with or observations of those other potential opt-in members; rather, [s]he must supply additional detail regarding the particular conversations or observations substantiating that belief." *Fu v. Mee May Corp.*, 15 Civ. 4549 (KPF), 2016 WL 1588132, at *3 (S.D.N.Y. Apr. 20, 2016); *see also Mata*, 2015 WL 3457293 at *3-4 (denying motion for conditional certification where plaintiff's only support for claim that other employees were not paid overtime was "observations and conversations with other employees" without providing details of those conversations).

Moreover, after Plaintiff completed her participation in the Program, NYU Langone changed the content and structure of the Program in light of new PTCB guidelines for accreditation. Accordingly, PTTP students now spend significantly less Program hours in experiential training. (*See* Reiss Decl. ¶ 10.) As that appears to be the only aspect of the Program that Plaintiff contends was time spent doing compensable "work" that was for the "primary benefit" of NYU Langone (Pl. Decl. ¶ 6), there is even less reason to believe that Plaintiff can demonstrate any pertinent similarity between her experiences and those of other students.

**B. Plaintiff's Proposed Notice is Unacceptable**

In the alternative, if this Court were to permit notice to be issued, Plaintiff's proposed form (Motion, Ex. 1) must be modified in several respects and limited in time to the statute of limitations for an FLSA action.

---

(Motion at 8), but overlooks the fact that the plaintiffs in that case submitted *six* declarations from themselves and other tipped workers containing similar allegations of the defendants' policies across eight restaurants in four states.

First, the proposed notice provides a one-sided summary of Plaintiff's claims, including the damages sought, but sets forth only a terse comment on Defendants' denial of liability. In order to ensure fairness in the description of the case and the parties' respective positions, Defendants should be afforded the opportunity to provide their own summary of defenses, including that NYU Langone maintains that students in the PTTP were not interns (let alone employees) and had no entitlement to "unpaid wages" or compensation for their participation in the Program. *See Hernandez v. Merrill Lynch & Co.*, 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012).

Second, in the section "Your Legal Rights," the Notice should be modified to indicate that potential opt-in plaintiffs do not necessarily have valid claims. *See Romero v. ABCZ Corp.*, No. 14 Civ. 3653, 2015 WL 2069870, at *3 (S.D.N.Y. Apr. 28, 2015); *Mazur v. Olek Lejbzon & Co.*, 05 Civ. 2194, 2005 WL 3240472, at *6 (S.D.N.Y. Nov. 30, 2005).

Third, the notice should state that it was created and sent by Plaintiff's counsel. The failure to include such a statement may improperly suggest a "certain specter of authority," which "impl[ies] more court sponsorship than appropriate." *Romero*, 2015 WL 2069870, at *3 n.2; *see also Hernandez*, 2012 WL 1193836, at *7.

Fourth, the notice fails to identify the name and address of Defendants' counsel, which many courts have found appropriate. *See Romero*, 2015 WL 2069870, at *3; *Harhash v. Infinity West Shoes, Inc.*, 10 Civ. 8285, 2011 WL 4001072, at *4 (S.D.N.Y. Aug. 25, 2011); *Guzman v. VLM, Inc.*, 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007).

Fifth, Plaintiff's proposed notice includes a reference to Plaintiff's NYLL claim. That claim is not subject to collective resolution and any reference to it should not be included in an FLSA notice. *See McBeth v. Gabrielli Truck Sales*, Ltd., 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011)

("Since the notice period will not encompass any state law claims, there is no reason to include reference to the pending state law claims in the Notice of Pendency.").

Sixth, Plaintiff requests that the notice be posted in the Pharmacy Department. (Motion at 5). This is generally inappropriate, but is especially so here given that the PTTP is a *temporary* training program and many of the intended recipients of the FLSA notice would not even be in a position to view the posting since they are no longer enrolled as students in the Program. *See Garcia v. Spectrum of Creations Inc.,* 102 F.Supp.3d 541, 551 (S.D.N.Y. 2015) ("We recognize that a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment.").

Seventh, the Court should not order the production of putative collective members' telephone numbers to protect their privacy and prevent phone solicitation in violation of the New York Rules of Professional Conduct. *See Gordon v. Kaleida Health*, No. 08–CV–378S, 2009 WL 3334784 at *9 (W.D.N.Y. Oct. 14, 2009) (denying request for opt-in plaintiffs' phone numbers, social security numbers, dates of birth and email addresses).

Eighth, Plaintiff presents no reason to order the disclosure of Social Security numbers for any putative opt-in plaintiffs. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 489 (S.D.N.Y. 2016) ("The Court declines to approve production of the Social Security numbers for the potential collective action members before Benavides has demonstrated, with specificity, the necessity of such sensitive information."); *Ji Li v. Ichiro Rest. Inc.*, No. 14–CV–10242, 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015) ("It is unnecessary to require that disclosure at this time."); *Garcia v. Spectrum of Creations Inc.*, 102 F.Supp.3d 541, 551 (S.D.N.Y. 2015) (denying "production of Social Security numbers . . . for the purpose of vising a 'skip trace' service to

contact employees whose mailings are returned as undeliverable," finding that "it is premature to require such information for the entire group when it is necessary only for what may be a small subset who cannot be reached" and providing that "this issue should revisited" when there is more information about "the efficacy of whatever measures are chosen to reach the similarly situated employees").

Finally, Plaintiff seeks to send notice to PTTP students for the previous six years. (Motion at 5 n.1). Six years is the limitations period for the NYLL, not the FLSA. The only individuals eligible to assert FLSA claims in this action are those who enrolled in the PTTP up to a maximum of *three years* before the filing of their consent form with the Court. *See Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 649 (S.D.N.Y. 2013) (limiting notice of FLSA collective action to employees up to three years prior to filing of complaint, rather than six years); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 563–64 (S.D.N.Y. July 11, 2013) (restricting notice period to three years rather than six because "[t]he motion before the Court is only for collective certification of a FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL"); *Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788, 2013 WL 3328223, at *7 (S.D.N.Y. Jul. 2, 2013) (holding that the "appropriate length of the notice period" was three years, in conformance with the FLSA's three-year statute of limitations, rather than six years under the NYLL's six-year statute of limitations); *Foster v. Food Emporium*, No. 99 Civ. 3860, 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000) (there was "no basis for this Court to authorize notice to potential class members going back six years (which is the statute of limitations under the [New York] Labor Law)").

**C. There are No Grounds for Applying Equitable Tolling**

In the event that conditional certification is granted, Plaintiff requests that the statute of limitations be tolled until the expiration of the opt-in period. (Motion at 11). But other than simply

requesting tolling and pointing to three cases where tolling was applied, Plaintiff makes no argument at all in support of this request, much less an argument justified by the procedural history of this case.

Equitable tolling is warranted only if the plaintiff shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The "Second Circuit has made clear" that equitable tolling requires "extraordinary or unique circumstances," and that district courts do not have the power to "effectively eliminate th[is] requirement" in FLSA cases. *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013); *see also Alberto v. Rico Pollo #2 Rest. Corp.*, 2018 WL 6813057, at *4–5 (E.D.N.Y. 2018) (same). Indeed, in *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014), the Second Circuit applied the same "extraordinary circumstances" equitable tolling standard to the FLSA that it applies generally to all cases, and created no special FLSA exception.

Here, Plaintiff's bare bones request does not identify any "extraordinary circumstance" that warrants equitable tolling. Instead, this case is "a regular, run-of-the-mill FLSA collective action" in which tolling is not required. *Alberto*, 2018 WL 6813057, at *4–5.[7]

Accordingly, Plaintiff's request for equitable tolling should be denied. *See Shiqiang Gao v. A Canaan Sushi Inc.*, No. 18 Civ. 6442 (GBD), 2019 WL 6724359, at *5 (S.D.N.Y. Dec. 10, 2019) (denying request for equitable tolling where plaintiff failed to present any time-barred potential plaintiff); *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17 Civ. 7066 (DF), 2019 WL

[7] Defendants recognize that extraordinary circumstances currently exist relating to the COVID-19 pandemic. But Plaintiff's ordinary request for tolling in the Motion – filed after New York City Mayor de Blasio declared a state of emergency – does not even begin to explain why or how those circumstances might affect this FLSA action.

699179, at *12 (S.D.N.Y. Feb. 5, 2019) (denying request where plaintiff failed showing of exceptional circumstances); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17 Civ. 04661 (PGG) (DF), 2019 WL 3759126, at *11 (S.D.N.Y. July 25, 2019) (denying request for equitable tolling).

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for conditional certification pursuant to 29 U.S.C. § 216(b). In the alternative, this Court should authorize the distribution of FLSA notices only as set forth herein and should deny Plaintiff's request for equitable tolling.

Dated: New York, New York
April 30, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Robert S. Whitman*

Robert S. Whitman
rwhitman@seyfarth.com
Lisa L. Savadjian
lsavadjian@seyfarth.com
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

Attorneys for Defendants